UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **JAMES FRANKLIN SNYDER,** | **Case No. 2:21-cv-00328-BLW** |
| **Plaintiff,** | **INITIAL REVIEW ORDER BY SCREENING JUDGE** |
| **v.** | |
| **KATLIN LYNN ROBINSON, BRANDON COLT BOWCUT, DONALD LAMAR HORTON, CODEY DIBIAS,** | |
| **Defendant.** | |

## INTRODUCTION

Pending before the Court is Plaintiff James Franklin Snyder's Application for Leave to Proceed in Forma Pauperis (Dkt. 1) and Motion to Appoint Counsel (Dkt. 3), as well as two other ex parte motions (Dkts. 5 and 8). The Clerk of the Court conditionally filed the complaint on August 16, 2021 as a result of Plaintiff's in forma pauperis request. (Dkt. 3).

Pursuant to 28 U.S.C. § 1915, the Court must review Plaintiff's request to determine whether he is entitled to proceed in forma pauperis—which permits civil litigants to proceed without prepayment of the filing fee or to pay the filing fee over time. *Rice v. City of Boise City*, No. 1:13-CV-00441-CWD, 2013 WL

**INITIAL REVIEW ORDER - 1**

6385657, at *1 (D. Idaho Dec. 6, 2013). Because he is filing to proceed in forma pauperis, 28 U.S.C. §1915(e)(2)(b), empowers the Court to "dismiss the case at any time if the court determines . . . the action . . . fails to state a claim on which relief may be granted." Having reviewed the record, and otherwise being fully informed, the Court enters the following Order.

## APPLICATION TO PROCEED IN FORMA PAUPERIS

"[A]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal . . . without prepayment of fees or security therefor." 28 U.S.C. 1915(a)(1). In order to qualify for in forma pauperis status, Plaintiff must submit an affidavit that includes a statement of all assets he possesses and that he is unable to pay the fee required. The affidavit is sufficient if it states that the plaintiff, because of his poverty, cannot "pay or give security for the costs" and still be able to provide for himself and dependents "necessities of life." *Adkins v. E.I. DuPont de Numours & Co.*, 335 U.S. 331, 339 (1948). The affidavit must "state the facts as to affiant's poverty with some particularity, definiteness and certainty." *United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981).

The Court has examined Plaintiff's application to proceed in forma pauperis and finds that it establishes his indigence. Plaintiff swears or affirms under penalty of perjury that he is unable to pay the filing fee at the time of the filing as a result

**INITIAL REVIEW ORDER - 2**

of his poverty. Plaintiff's application indicates that his only source of income is from disability and help from his mother, his checking account is overdrawn, his only asset is 2002 Jeep worth $700, and his expenses for the basic necessities of food, shelter, and clothing exceed any income he may receive. Thus, Plaintiff qualifies for in forma pauperis status and his application is GRANTED. Plaintiff need not pay the filing fee in order to proceed.

## REVIEW OF COMPLAINT

### 1.    Factual Allegations

Plaintiff brings a civil rights action under 42 U.S.C. § 1983 for alleged constitutional violations against three individuals he identifies as employees of the Kootenai County Hospital Emergency Department and one police officer. Plaintiff maintains he is disabled with a traumatic brain injury and also suffers from Post-Traumatic Stress Disorder. From his Complaint, it appears he was taken to the emergency department at Kootenai Health on June 30, 2021. At the hospital, Plaintiff, a Seventh Day Adventist, alleges that Defendants forced him to take medication in violation of his religious beliefs, and when he refused, he alleges the "healthcare workers and cops punched me with closed fists for around 2 minutes," reinjuring his brain injury and triggering his PTSD. *Compl.*, p. 4, Sec. C, Dkt. 1.

Plaintiff further alleges that "Katlin the nurse setup the violent attack on me by the guards and police officer," and "Brandon colt Bowcut, Donald Lamar

**INITIAL REVIEW ORDER - 3**

Horton, violently attacked James Plaintiff with no justifiable reason." *Id.*, p. 5, Sec. D. According to Plaintiff, "I wouldn't take their medication, so they surrounded my hospital bed and triggered my PTSD. *Id.* He claims, "They knew they were going to get violent before they even came in the room. They didn't approach my bed to try and restrain me. They ran over to my bed and just started punching me." *Id.* With respect to the police officer, Plaintiff alleges the "video shows the officer ran up and just started throwing hard blows landing on Mr. Snyder" and "let other civilians punch Mr. Snyder as well along side him." *Id.* Although not stated in the Complaint, it can be further gleaned from the record that Plaintiff pled guilty to misdemeanor battery on Defendants following this incident. *Mot. for State Action* , p. 1, Dkt. 5.  Plaintiff states Defendants "lied in there [sic] statements saying, 'I hit them.'" *Compl.*, p. 4, , ¶ C, Dkt. 1.

Based on these allegations, Plaintiff claims Defendants violated "ADA 504 as well as the civil rights listed on initial lawsuit," which Plaintiff claims include the First, Fourth, Fifth, Eighth, and Fourteenth Amendments.

## 2. Screening Standard

The Court is permitted to conduct an initial review of complaints filed in forma pauperis to determine whether summary dismissal is appropriate. If it chooses to engage in such a review, the statute requires the Court to dismiss any portion of the complaint if it states a frivolous or malicious claim, fails to state a

**INITIAL REVIEW ORDER - 4**

claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). To state a claim upon which relief can be granted, plaintiff's complaint must include facts sufficient to show a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

A complaint fails to state a claim for relief under Rule 8 of the Federal Rules of Civil Procedure if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," the complaint has not stated a claim for relief that is plausible on its face. *Id.* (internal quotation marks omitted).

During this initial review, courts generally construe pro se pleadings liberally, giving pro se plaintiffs the benefit of any doubt. *See Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual and legal basis. *See*

**INITIAL REVIEW ORDER - 5**

*Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), superseded by statute on other grounds as stated in *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000). Additionally, if amending the complaint would remedy the deficiencies, plaintiffs should be notified and provided an opportunity to amend. *See Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To state a valid claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by the conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

### 3.   Individual Hospital Defendants

As noted, to state a claim under § 1983, a plaintiff must not only allege the violation of a constitutional right or federal statute but also that the alleged deprivation was committed by a person acting *under color of state law*. *Crumpton*,

**INITIAL REVIEW ORDER - 6**

947 F.2d at 1420. Plaintiff's Complaint raises the threshold question of whether the individual hospital defendants, Katlin Lynn Robinson, Brandon Colt Bowcut, and Donald Lamar Horton, acted under color of state law in allegedly administering the medication without Plaintiff's consent and against his religious beliefs.

### A. Under Color of State Law

Section 1983 created a federal cause of action for damages to vindicate alleged violations of federal law committed by individuals acting "under color of state law." 42 U.S.C. § 1983; *see also Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("[T]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."). Thus, the only proper defendants in a § 1983 claim are those who "represent [the state] in some capacity, whether they act in accordance with their authority or misuse it." *National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988). By contrast, §1983 does not provide a remedy for purely private conduct that is not fairly attributable to the State, "no matter how unfair that conduct may be." *Id.*

But while the dichotomy between private conduct and governmental conduct is "well established and easily stated," it "frequently admits of no easy answer." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349–50 (1974). "The traditional definition of acting under color of state law requires that the defendant

**INITIAL REVIEW ORDER - 7**

in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal quotation marks and citation omitted). "[S]tate employment is generally sufficient to render the defendant a state actor." *Id.* (quoting *Lugar v. Edmondson Oil Co*., 457 U.S. 922, 935 (1982)). "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." *Id.* "Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Id.*

Here, at least at the pleading stage, the Court concludes the hospital defendants qualify as state actors for § 1983 purposes. Plaintiff identifies these three individuals as employees of Kootenai County Hospital Emergency Department. The Court's research did not reveal any entity named "Kootenai County Hospital," but a "community-owned" hospital with an emergency department doing business as Kootenai Health does exist in Kootenai County. It appears Kootenai Health is a public county hospital created through a petition signed by a certain percentage of taxpayers and approved by the board of county commissions, and is supported through taxpayer funds. I.C. § 39-1320. If correct, Kootenai Health is a public county hospital.

**INITIAL REVIEW ORDER - 8**

The Ninth Circuit has specifically held that public hospitals are state actors for § 1983 purposes. *Chudacoff v. Univ. Med. Ctr. of S. Nevada*, 649 F.3d 1143, 1150 (9th Cir. 2011) ("Rather, UMC is through and through a public hospital, and there is no dispute that the operation of [a public] hospital is state action.")(citation and internal quotation marks omitted). Thus, assuming Kootenai Health is a "public hospital," it acts are state acts. By extension, the hospital defendants' employment with Kootenai Health suffices to render them state actors. *Id. See also Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 282 (7th Cir. 1986) ("[T]he conduct of a public hospital and its employees is clearly state action.").

The Court does not conclusively find, however, that the hospital defendants are state actors. "[D]etermining state action can admittedly be an imperfect science," *Chudacoff*, 649 F.3d at 1149, and the hospital defendants may present facts that Kootenai County is not sufficiently connected with Kootenai Health's activities to imbue its employees' actions with the attributes of the state. But, as stated at the outset, during this initial review, the Court liberally construes the Complaint, giving Plaintiff the benefit of any doubt. *See Resnick*, 213 F.3d at 447.

### B. *Deprivation of a Constitutional Right*

Plaintiff alleges that Defendant Robinson, "the nurse," knowing he is a Seventh Day Adventist, "illegally injected [him] with [a] pharmaceutical drug to sedate [him]" in violation of his religious principles. *Compl.*, p. 4, Dkt. 2. Plaintiff

**INITIAL REVIEW ORDER - 9**

also claims that "Katlin [Robinson] the nurse setup the violent attack on [him] by the guards and police officer." *Id.* With respect to the remaining two hospital defendants, Brandon Colt Bowcut and Donald Lamar Horton, Plaintiff alleges they "violently attacked" him "with no justifiable reason." *Id.* He maintains that Bowcut and Plaintiff did not approach his bed to try and restrain him but instead "ran over to [his] bed and just started punching" him.

Plaintiff's allegations against the hospital defendants potentially implicate Plaintiff's First Amendment right to free exercise of religion, his Fourteenth Amendment due process rights to privacy and bodily integrity, and his Fourth Amendment right against unreasonable searches and seizures.[1]

### (1) First Amendment

Religious freedom is guaranteed by the free exercise clause of the First Amendment, which provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend. I; *see also Cantwell v. State of Conn.*, 310 U.S. 296, 303 (1940) (holding

---

[1] Plaintiff's allegations, no matter how liberally construed, do not state claims under the Fifth or Eighth Amendments against any defendant. The Eighth Amendment only applies to prisoners, and Plaintiff's Complaint specifically states he was not a prisoner at the time the alleged events took place. And nothing in Plaintiff's Complaint suggests that his Fifth Amendment right against self-incrimination was violated. Likewise, Plaintiff has not stated a claim under the American With Disabilities Act, which requires allegations that the defendants discriminated against the plaintiff because of a disability. While Plaintiff has alleged that he is disabled, he has not otherwise alleged any facts that would suggest he was discriminated against because of his disability.

**INITIAL REVIEW ORDER - 10**

that the First Amendment's free exercise clause applies to the states through the Fourteenth Amendment). "The free exercise of religion means, first and foremost, the right to believe and profess whatever religious doctrine one desires." *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 877 (1990). Thus, "[t]he government may not compel affirmation of religious belief, punish the expression of religious doctrines it believes to be false, impose special disabilities on the basis of religious views or religious status, or lend its power to one or the other side in controversies over religious authority or dogma." *Id.* (citations omitted).

But "[n]ot all burdens on religion are unconstitutional," and "[t]he state may justify a limitation on religious liberty by showing that it is essential to accomplish an overriding governmental interest." *United States v. Lee*, 455 U.S. 252, 257 (1982). The right to free exercise does not relieve a person from complying with a valid, neutral law or policy of general applicability. *Smith*, 494 U.S. at 879. In addition, the State may take reasonable steps to protect the public health and safety, and the State's authority is not nullified because an individual grounds his claim on religion. *C.f. Prince v. Massachusetts,* 321 U.S. 158, 166–67 (1944) (The state's authority "is not nullified merely because the parent grounds his claim to control the child's course of conduct on religion....").

Courts apply two levels of scrutiny to laws or policies that allegedly burden religion under the free exercise clause. On the one hand, courts apply "the most

**INITIAL REVIEW ORDER - 11**

rigorous of scrutiny" to laws burdening religion that are neither neutral nor of general application. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993). Such laws will be found unconstitutional unless the government can show the law serves "a compelling interest and is narrowly tailored to advance that interest." *Id.* at 533. On the other hand, courts apply rational basis review to neutral laws or policies of general applicability. *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1075–76 (9th Cir. 2015). "Under rational basis review, we must uphold the rules if they are rationally related to a legitimate governmental purpose." *Id.* at 1084.

The Court will liberally construe Plaintiff's Complaint as stating a claim that Defendant Robinson infringed on Plaintiff's religious freedoms by allegedly forcibly injecting him with medication in violation of his religious beliefs knowing that he was Seventh Day Adventist. *See, e.g., Holmes v. Silver Cross Hosp. of Joliet*, Ill., 340 F. Supp. 125, 130 (N.D. Ill. 1972) (concluding state-appointed conservator's ordering of medical treatment for a person in violation of his religious beliefs, no matter how well intentioned the conservator may be, violates the First Amendment's freedom of exercise clause in the absence of some substantial state interest). The hospital defendants may defeat this claim by showing they had a substantial or legitimate government interest to protect the

**INITIAL REVIEW ORDER - 12**

health and safety of the public in administering the sedative against Plaintiff's stated and sincerely-held religious beliefs. *See, e.g., Prince,* 321 U.S. at 166–67.

At this time, Synder may not proceed against Defendants Horton or Bowcut under the First Amendment because Synder has not alleged that Defendants Horton and Bowcut knew Plaintiff was a Seventh Day Adventist and that he allegedly refused the medication on religious grounds. Without any suggestion that these hospital defendants possessed "a purposeful, a knowing, or possibly a reckless state of mind," with respect to administering the sedative in violation of Plaintiff's religious beliefs, the claims against them necessarily fails. *Kingsley*, 135 S. Ct. at 2472.

### (2) *Fourteenth Amendment*

Plaintiff's allegations also implicate the Fourteenth Amendment. The Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The Due Process Clause significantly restricts government action—its core "is prevent[ing] government from abusing its power, or employing it as an instrument of oppression." *Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992) (internal quotation marks and brackets omitted); *see also Lewis*, 523 U.S. at 845–46 ("The touchstone of due process is protection of the individual against arbitrary action of government, [including] the exercise of power without any reasonable

**INITIAL REVIEW ORDER - 13**

justification in the service of a legitimate government objective." (internal

quotation marks omitted)). Although the Clause provides no guarantee "of certain

minimal levels of safety and security," it expressly prohibits deprivations by "the

State itself." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189

(1989). That is, its purpose is to protect people from the State and not to ensure the

State protect people from each other. *Id.* at 196.

There are procedural and substantive due process components. Only the

latter component is at issue here. Substantive due process "bar[s] certain

government actions regardless of the fairness of the procedures used to implement

them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). It "specifically protects

those fundamental rights and liberties which are, objectively, deeply rooted in this

Nation's history and tradition, and implicit in the concept of ordered liberty, such

that neither liberty nor justice would exist if they were sacrificed." *Washington v.*

*Glucksberg*, 521 U.S. 702, 720–21 (1997) (internal quotation marks and citations

omitted). The liberty interests secured by the Due Process Clause "include[ ] the

right 'generally to enjoy those privileges long recognized at common law as

essential to the orderly pursuit of happiness by free men.' " *Ingraham v. Wright*,

430 U.S. 651, 673 (1977) (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)).

These common-law privileges, the Supreme Court has held, specifically embrace

the right to bodily integrity, *Glucksberg*, 521 U.S. at 720, and the right not to be

**INITIAL REVIEW ORDER - 14**

subjected to arbitrary and capricious government action that "shocks the conscience and violates the decencies of civilized conduct." *Lewis*, 523 U.S. at 846–47 (internal quotation marks omitted).

Substantive Due Process is not a rigid conception; nor does it offer recourse for every wrongful action taken by the government. *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 862 (6th Cir. 2012). It therefore "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Daniels*, 474 U.S. at 332. This means that a plaintiff must carefully describe the asserted liberty interest, *Glucksberg*, 521 U.S. at 721 (citation omitted); otherwise the Clause would turn into "a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Daniels*, 474 U.S. at 332 (citation omitted). Accordingly, the Court must focus on the allegations in the complaint to determine the constitutional right at stake and what the defendants allegedly did to deprive them of that right. *Collins*, 503 U.S. at 125.

Snyder's Complaint deals with the scope of the right to bodily integrity under the Fourteenth Amendment, an indispensable right recognized at common law as the "right to be free from ... unjustified intrusions on personal security" and "encompass[ing] freedom from bodily restraint and punishment." *Ingraham*, 430 U.S. at 673–74. This common law right is first among equals. As the Supreme

**INITIAL REVIEW ORDER - 15**

Court has said: "No right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Union Pac. Ry. Co. v. Botsford*, 141 U.S. 250, 251 (1891); *cf. Schmerber v. California*, 384 U.S. 757, 772 (1966) ("The integrity of an individual's person is a cherished value of our society."). Absent lawful authority, invasion of one's body "is an indignity, an assault, and a trespass" prohibited at common law. *Union Pac. Ry.*, 141 U.S. at 252.

The Supreme Court has specifically held that the "forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty." *Washington v. Harper*, 494 U.S. 210, 229 (1990). "This notion of bodily integrity has been embodied in the requirement that informed consent is generally required for medical treatment, generally encompasses the right of a competent individual to refuse medical treatment, and is a right that may be inferred from the Court's prior decisions." *Guertin v. State*, 912 F.3d 907, 920 (6th Cir. 2019), *cert. denied sub nom. City of Flint, Michigan v. Guertin*, 140 S. Ct. 933 (2020), and *cert. denied sub nom. Busch v. Guertin*, 140 S. Ct. 933 (2020) (quoting *Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261 (1990) (internal quotation marks and brackets omitted).

**INITIAL REVIEW ORDER - 16**

In light of these principles and Plaintiff's allegations, Plaintiff's Complaint also appears to state a colorable Fourteenth Amendment claim against each of the hospital defendants based on his allegations that they forcibly injected him with medication without his consent. To ultimately prevail on this claim, however, Plaintiff must not only show the deprivation of a constitutionally protected liberty interest but also "must show how the government's discretionary conduct that deprived that interest was constitutionally repugnant." *Id.* Courts "use the 'shocks the conscience' rubric to evaluate intrusions into a person's right to bodily integrity." *Id. See also Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). The Court does not guarantee that Plaintiff will ultimately be successful in his claims against the hospital defendants in light of the "shocks the conscience " standard – merely that he states a claim.

### (3) Fourth Amendment

Very liberally construed, Plaintiff's Complaint also states a claim against Defendants Bowcut and Horton for use of excessive force during the course of a "seizure." "The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Torres v. Madrid*, 141 S. Ct. 989, 995 (2021). "This case concerns the 'seizure' of a 'person,' which can take the form of 'physical force' or a 'show of

authority' that 'in some way restrain[s] the liberty' of the person." *Id.* (quoting

*Terry v. Ohio*, 392 U.S. 1, 19, n. 16 (1968)).

To prove an excessive force claim under § 1983 during the course of an

arrest, investigatory stop, or other "seizure," the plaintiff must show that the "force

purposely used against him was objectively unreasonable." *Kingsley v.*

*Hendrickson*, 135 S.Ct. 2466, 2473 (2015). A court (judge or jury) cannot apply

this standard mechanically. *See id.* Rather, "objective reasonableness turns on the

'facts and circumstances of each particular case.'" *Id.* (quoting *Graham v. Connor*,

490 U.S. 386, 396 (1989)). A court must make this determination from the

perspective of a reasonable person on the scene, including what the person knew at

the time, not with the 20/20 vision of hindsight. *See Kingsley*, 135 S.Ct. at 2473.

Here, Plaintiff's allegations may be very liberally construed as stating that

he was confined to his hospital bed against his will, and thus was "seized," when

Defendants Bowcut and Horton  "violently attacked him" without provocation

while Plaintiff just lay there with his hands at his sides.[2] Even assuming, however,

───────────────

[2] The Supreme Court has instructed the federal courts that, whenever possible, they should
analyze constitutional claims using an "explicit textual source of constitutional protection,"
rather than using "the more generalized notion of 'substantive due process' " under the
Fourteenth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Under the *Graham*
principle, Plaintiff's claim relating to the hospital defendants allegedly attacking him is more
appropriately construed as a Fourth Amendment claim than a Fourteenth Amendment
substantive due process claim. Therefore, Plaintiff may not proceed under the Fourteenth
       (Continued)

**INITIAL REVIEW ORDER - 18**

Plaintiff's alleged confinement at Kootenai Health constituted a seizure, such seizure would not be unconstitutional if the hospital staff had reasonable grounds to believe that Plaintiff was a danger to himself and others. *See, e.g., Anthony v. City of New York*, 339 F.3d 129, 142 (2d Cir. 2003) ("Anthony's confinement at Kings County Hospital was not unconstitutional, however, because the hospital staff had reasonable grounds to believe that she was a danger to herself or to others."). Once again, the Court expresses no opinion regarding the ultimate merits of Plaintiff's Fourth Amendment claim against the hospital defendants – only that he has stated a claim.

Plaintiff, however, does not state a claim against Defendant Robinson for allegedly conspiring with Defendants Bowcut and Horton to violently attack him. Plaintiff offers nothing more than pure speculation that Robinson was involved in some conspiracy to beat up Plaintiff. This is not enough to state a claim. Thus, the Court, without more, will not allow Plaintiff to proceed on any claim against Robinson based on her alleged participation in a conspiracy to violently attack him.

**4.    Officer Codey Debias**

Plaintiff also alleges that Officer Codey Debias employed excessive force against him. Plaintiff describes the force used upon him as "EXCESSIVE FORCE

---

Amendment against the hospital defendants based on his allegations that they violently attacked him.

**INITIAL REVIEW ORDER - 19**

AT ITS FINEST" and further states that "the officer ran up and just started throwing hard blows landing on Mr. Snyder." *Compl.*, p. 4, Dkt. 2. Plaintiff further claims that his arms remained at his side during the entire incident, and he did nothing to provoke or justify the use of force. *Id.* Accepting the Plaintiff's allegations as true, as the Court must, and applying the standards articulated above regarding excessive force claims, the Court finds that Plaintiff has stated a plausible excessive force claim against Officer Debias.

**5.    Conclusion**

Plaintiff will be permitted to proceed on the following claims: (1) a First Amendment free exercise claim and Fourteenth Amendment right to privacy and bodily integrity claim against Katlin Lynn Robinson; (2) a Fourteenth Amendment right to privacy and bodily integrity claim against Brandon Colt Bowcut and Donald Lamar Horton based on their alleged participation in forcibly injecting him with a sedative and a Fourth Amendment excessive force claim against them based on Plaintiff's allegations that they attacked him without provocation; and (3) a Fourth Amendment claim for excessive force against Codey Debias.

This Order does not guarantee that any of Plaintiff's claims will be successful. Rather, it merely finds that some of Plaintiff's claims are plausible— meaning that these claims will not be summarily dismissed at this time but will

**INITIAL REVIEW ORDER - 20**

proceed to the next stage of litigation. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims.

Any defendant may still file a motion for dismissal or motion for summary judgment if the facts and law support such a motion.[3] Because (1) pro se filings must be afforded a liberal construction, (2) governmental officials often possess the evidence pro se plaintiffs asserting § 1983 claims need to support their claims, and (3) many defenses are supported by governmental records, an early motion for summary judgment—rather than a motion to dismiss—is often a more appropriate vehicle for asserting procedural defenses such as non-exhaustion or entitlement to qualified immunity.

## APPOINTMENT OF COUNSEL

Plaintiff also seeks appointment of counsel. Unlike criminal defendants, prisoners and indigents in civil actions have no constitutional right to counsel unless their physical liberty is at stake. *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981). Whether a court appoints counsel for indigent litigants is within the court's discretion. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

---

[3] The standards for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are the same standards that the Court has used to screen the Complaint under §§ 1915 and 1915A. Therefore, motions to dismiss for failure to state a claim are disfavored in cases subject to §§ 1915 and 1915A and may be filed only in extraordinary circumstances.

**INITIAL REVIEW ORDER - 21**

In civil cases, counsel should be appointed only in "exceptional circumstances." *Id.* To determine whether exceptional circumstances exist, the court should evaluate two factors: (1) the likelihood of success on the merits of the case, and (2) the ability of the plaintiff to articulate the claims pro se considering the complexity of legal issues involved. Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991). Neither factor is dispositive, and both must be evaluated together. *Id.*

Plaintiff's Complaint, liberally construed, appears to state a claim upon which relief could be granted if the allegations are proven at trial. However, without more than the bare allegations of the Complaint, the Court does not have a sufficient basis upon which to assess the merits at this point in the proceeding. The Court also finds that Plaintiff has articulated the claims sufficiently, and that the legal issues in this matter are not complex. Based on the foregoing, the Court will deny Plaintiff's request for appointment of counsel. If it seems appropriate later in this litigation, the Court will reconsider appointing counsel.

A federal court has no authority to require attorneys to represent indigent litigants in civil cases under 28 U.S.C. § 1915(e)(1) or under the Court's inherent authority. *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 298 (1989) (holding that the appointment of counsel provision in § 1915, formerly found in subsection (d), does not "authorize[] a federal court to require an

**INITIAL REVIEW ORDER - 22**

unwilling attorney to represent an indigent litigant in a civil case"); *Veenstra v. Idaho State Bd. of Corr.*, Case No. 1:15-cv-00270-EJL (D. Idaho May 4, 2017) ("[The Court] does not have inherent authority to compel an attorney to represent Plaintiffs pro bono."). Rather, when a Court "appoints" an attorney, it can do so only if the attorney voluntarily accepts the assignment. *Id.* The Court has no funds to pay for attorneys' fees in civil matters such as this one, and it is often difficult to find attorneys willing to work on a case without payment. For these reasons, Plaintiff should attempt to procure counsel on a contingency or other basis, if possible.

## EX PARTE MOTIONS

Written motions must generally be served on each of the parties, unless it is an ex parte motion. Fed. R. Civ. P. 5(a). Ex parte motions are legitimate only when there is some genuine urgency, such as an ex parte temporary restraining order, or when there is danger that an opposing party will flee, destroy evidence or hide assets if notified. *In re Intermagnetics Am., Inc.*, 101 B.R. 191, 193-94 (C.D. Cal. 1989) (cited with approval in *United States v. Real Property Located at 22 Santa Barbara Dr.*, 264 F.3d 860, 870 (9th Cir. 2001)).

The two remaining motions pending in this matter were filed before service of process on Defendants and are therefore ex parte motions. Based on the

**INITIAL REVIEW ORDER - 23**

Court's review of the motions, none of the dangers described above are present.

Therefore, the Court will dismiss the motions without prejudice.

## ORDER

**IT IS ORDERED that:**

1.  Plaintiff's Application to Proceed in Forma Pauperis (Dkt. 1) is **GRANTED**.

2.  Plaintiff's Motion for Appointment of Counsel (Dkt.  3) is **DENIED**.

3.  Plaintiff's Emergency Motion for State Case to be Moved into Federal Court is **DENIED** without prejudice.

4.  Plaintiff's Motion Evidence Police BodyCam Video is **DENIED** without prejudice.

5.  Plaintiff may proceed on the following claims: (1) First Amendment free exercise claim and Fourteenth Amendment right to privacy and bodily integrity claim against Katlin Lynn Robinson; (2) Fourteenth Amendment right to privacy and bodily integrity claim and Fourth Amendment excessive force claim against Brandon Colt Bowcut and Donald Lamar Horton; and (3) Fourth Amendment excessive claim for against Codey Debias.  All other claims are **DISMISSED**.

**INITIAL REVIEW ORDER - 24**

6.  The Clerk of the Court is directed to issue summonses and provide the
    United States Marshals Service with a copy of the docket, Plaintiff's
    Complaint, the Initial Review Order, and the instant order to be served
    upon the following Defendants at the following addresses:

    a.  Katlin Lynn Robinson, Kootenai Health, 2003 N. Kootenai Health
        Way, Coeur d' Alene, Idaho 83814.

    b.  Brandon Colt Bowcut, Kootenai Health, 2003 N. Kootenai Health
        Way, Coeur d' Alene, Idaho 83814.

    c.  Donald Lamar Horton, Kootenai Health, 2003 N. Kootenai Health
        Way, Coeur d' Alene, Idaho 83814.

    d.  Officer Codey Debias, Coeur d' Alene Police, 3818 N. Schreiber
        Way, Coeur d' Alene, Idaho 83815.

7.  The parties shall not engage in any discovery until an answer has been
    filed. Within 30 days after an answer has been filed, the parties shall
    provide each other with the following voluntary disclosures: all
    relevant information pertaining to the claims and defenses in this case,
    including the names of individuals likely to have discoverable
    information, along with the subject of the information, as well as any
    relevant documents in their possession, in a redacted form if necessary
    for security or privilege purposes; and, if necessary, they shall provide

**INITIAL REVIEW ORDER - 25**

a security/privilege log sufficiently describing any undisclosed

relevant documents that are alleged to be subject to nondisclosure.

Any party may request that the Court conduct an in camera review of

withheld documents or information.

8.    If, instead of filing an answer, Defendants file a motion to dismiss

under Federal Rule of Civil Procedure 12(b) or a motion for summary

judgment under Rule 56 that addresses preliminary procedural issues

rather than the merits, then disclosures and discovery shall be

automatically stayed with the exception that Defendants shall submit

with any exhaustion-of-administrative-remedies motion a copy of all

grievance-related forms and correspondence, including a copy of

original handwritten forms submitted by Plaintiff that either fall

within the relevant time period or that otherwise relate to the subject

matter of a claim. **Submission of a motion for summary judgment**

**addressing procedural issues does not foreclose any party from**

**later filing a motion for summary judgment on the merits.**

9.    Each party shall ensure that all documents filed with the Court are

simultaneously served upon the opposing party (through counsel if the

party has counsel) by first-class mail or via the CM/ECF system,

pursuant to Federal Rule of Civil Procedure 5. Each party shall sign

**INITIAL REVIEW ORDER - 26**

and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

10. The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rules of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

11. All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

12. Discovery shall not be filed with the Clerk of Court, but shall be exchanged between parties, only, as provided for in the Federal Rules

**INITIAL REVIEW ORDER - 27**

of Civil Procedure. Motions to compel discovery shall not be filed unless the parties have first attempted to work out their disagreements between themselves.

13.    No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter then pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

14.    Plaintiff shall notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

DATED: December 1, 2021

B. Lynn Winmill
U.S. District Court Judge

**INITIAL REVIEW ORDER - 28**